Filed 12/22/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LEAHY, | D080860 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2014-00009193-CU-HR-CTL) |
| JEFFREY PETERSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Reversed and remanded with directions.

Jeffrey Peterson, in pro. per., for Defendant and Appellant.

Bobbitt, Pinckard & Fields, Richard L. Pinckard and Bradley M. Fields for Plaintiff and Respondent.

Defendant and appellant Jeffrey Peterson, a self-represented litigant, appeals from an order renewing for a second five-year period a civil harassment restraining order (Code Civ. Proc.,[1] § 527.6, subd. (j)(1)) in favor of plaintiff and respondent Christopher Leahy and Leahy's wife.  In 2017, Leahy had obtained a five-year renewal of an original three-year restraining

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

order against Peterson issued by the superior court in 2014.  The superior court in granting the second renewal emphasized that Leahy was not required to present new evidence, but only demonstrate a probability that Peterson's wrongful acts would be repeated in the future.  Peterson contends for various reasons the second renewal order should be reversed and he should be granted a new trial on Leahy's request.

We asked the parties for supplemental briefing on whether section 527.6 authorizes a second five-year renewal of a civil harassment restraining order without a showing of additional harassment.  Though Leahy asserts (among other things) Peterson waived the question by not raising it below or in his appellate briefs, we may properly address it for the first time on appeal, as it is a purely legal question that also implicates the due administration of justice.  We hold section 527.6, subdivision (j)(1) did not authorize the court to enter its order without Leahy making a showing of new harassment, i.e., Peterson's wrongful acts within the meaning of section 527.6, subdivision (b)(3) occurring after issuance of the original restraining order.  Though Leahy maintains he made this showing by presenting evidence Peterson filed a federal court lawsuit against him in 2021, this is constitutionally protected activity that cannot constitute harassment. (§ 527.6, subd. (b)(1).)  Because the court operated under a misunderstanding of the law, we reverse the order with directions indicated below.

FACTUAL AND PROCEDURAL BACKGROUND[2]

In March 2022, Leahy, a detective with the San Diego Police Department, filed a notice of hearing to renew, for a second time, a section 527.6 civil harassment restraining order that he had obtained against Peterson. In a sworn declaration, Leahy explained that in 2010, he had been assigned to investigate a claim that Peterson had been stalking a woman—P.D.—for several years and in multiple countries, and that Peterson was eventually arrested and convicted of stalking. Leahy stated that in the following months and years, Peterson e-mailed him incessantly, filed false internal affairs complaints, and harassed and annoyed him. Leahy explained that in 2014, he and his wife encountered Peterson while walking their dog in their neighborhood. Thereafter, Peterson was arrested for stalking him, and Leahy obtained a three-year civil harassment restraining order against Peterson protecting both himself and his wife. Leahy later obtained a five-year renewal of the order, which was set to expire in March 2022. Leahy stated: "Since the encounter with Mr. Peterson while I was off-duty, my wife and I live in sustained fear that Mr. Peterson, who is the most unsettled and

[2]     Given that our conclusion is directed at the trial court's reasoning in granting Leahy's request for a second renewal of the civil harassment restraining order and application of the law to the facts, we summarize the background mainly from the papers on Leahy's request for the second renewal and the record of the hearing on his request. The facts underlying the original 2014 restraining order or its 2017 renewal are described in our prior nonpublished opinion *Leahy v. Peterson* (Sept. 24, 2018, D072383). We previously augmented the record on appeal at both Peterson's and Leahy's requests. Leahy alternatively sought judicial notice of his opposition to Peterson's motion for new trial, as to which we denied augmentation. We decline to grant judicial notice of that document as it is unnecessary to resolution of this appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

obsessive person I have ever met in my career, intends on hurting and or harming us.  We moved from the home we were living in, and have enhanced security measures at our new home, and I now carry a firearm with me at all times both on and off duty."  Leahy continued:  "I have since come to learn Mr. Peterson has filed a litany of grievances with the court in an attempt to traverse the restraining order. Most recently, on November 9, 2021, Mr. Peterson filed a complaint for injunctive relief and damages; demand for jury trial in U[nited] S[tates] District Court, Southern District of California against me.  Mr. Peterson is again making the attempt to evade the effects of his underlying criminal conviction for stalking (to which petitioner Leahy was the investigating officer) as well an attempt to "vindicate" himself in response to this court's issuance of the civil harassment restraining order.  I believe he does this so he can claim to have a legitimate reason for continuing to travel to San Diego, trips which are financed by his enabling parents.  A rational person, who resides out of state, would merely stay away from the protected parties and move on with his life, however Mr. Peterson continues his obsessive behavior by keeping the [P.D.] case alive.  The only way he can now achieve that is by incessantly filing grievances with the court so he can legitimize and rationalize his reasons for continuing to travel to San Diego. Mr. Peterson's obsessive behavior has now vicariously attached onto me, and my family, because I arrested him.  Mr. Peterson blames me for all of his life's problems and I fear his frustration and obsession could culminate into a plan to hurt or harm me and my wife.  As a result of Mr. Peterson targeting us, my wife and I have had to change our daily routines and enhance security measures at our home and we live in sustained fear that Mr. Peterson will harm us.  [¶]  . . .  As a result of the foregoing, I am requesting that the restraining order be renewed for the maximum five years enjoining Mr.

4

Peterson from having any contact with me or my wife or being within 100 yards of myself, my wife and our places of work and residence." (Some capitalization omitted.)

Peterson opposed the request. He included a lengthy declaration in which he admitted he had e-mailed Leahy, but denied stalking or following him. Calling it a "sensational narrative," Peterson disputed the credibility of Leahy's declaration and accused both Leahy and the City Attorney of misstating facts. Peterson stated Leahy's renewal request appeared to be primarily based on Peterson's filing of a civil complaint, which he asserted was brought against Leahy and the San Diego Police Department for violating his Fourth Amendment rights.

In reply, Leahy submitted another declaration. Observing Peterson lived in a different state over 2,000 miles from San Diego, Leahy stated: "[Peterson] recently filed a lawsuit against me, making more false allegations, all in an attempt to relitigate and keep alive his delusional obsession with [P.D.] and secondarily me. For those reasons, and his continued fixation with me, my family, and his original stalking victim, I firmly believe Mr. Peterson continues to be obsessed, delusional, and hyper-focused on creating an environment of sustained fear for me and his other stalking victims." He asserted that Peterson "makes false and misleading accusations about anyone that disagrees with him and he presents himself to the court as a perpetual victim of the system. Everyone in his mind is corrupt and out to frame him. I believe this goes to Mr. Peterson's delusional state of mind, again another reason I am requesting the restraining order

extension for me and my family."[3]  Leahy stated he would seek an extension of the restraining order "every time it's set to expire," explaining his request was not based on Peterson's civil complaint:  "Mr. Peterson's new lawsuit targeting me is another example of his inability to move on with his life and his fixation on me.  That lawsuit is not why I am seeking a renewal of the restraining order as Mr. Peterson contends in his opposition.  Rather, as my moving papers state, I am seeking a renewal because of the severity and longevity of Mr. Peterson's wrongful conduct, and my sincere belief that there is a substantial likelihood that this conduct will continue in the future.  I offered and refer to the new litigation filed by Peterson only as yet another example of his fixation and obsession with his criminal prosecution 12 years ago, and with me as the investigating officer to the crimes he committed.  I expect a motion to dismiss will be granted in that lawsuit because the claims Mr. Peterson alleges are devoid of any legal or factual basis, beyond the statute of limitations, and created in the fantasy of his mind."

The City filed papers in support of Leahy's renewal request, explaining it had a strong interest in protecting its employees.  It argued Peterson had mischaracterized the relevant legal standard for renewal; that section 527.6 allowed the court to rely solely on the record in the original case in deciding

---

[3]  Addressing the 2014 encounter, Leahy explained that he felt "certain" Peterson had learned where he lived and researched his home address:  "This is the only logical reason Mr. Peterson would have appeared in my neighborhood and been at the exact same place and time while my family and I were walking our dog.  Mr. Peterson's laptop computer was seized as a potential item of evidence during his March 2014 arrest.  A warrant was obtained authorizing investigators to forensically examine the computer.  Recent images of me and my family that had been posted to social media were found stored on Mr. Peterson's device.  These images were posted just days before Mr. Peterson 'coincidentally' encountered me and my family in our neighborhood."

6

whether to renew the order, and the order could be renewed without a showing that further harassment had occurred since issuance of the original order. The City argued Leahy in his declaration had established a reasonable probability that Peterson's wrongful conduct would reoccur.

In July 2022, Peterson filed a form response to Leahy's request, giving additional reasons why he did not want the court to renew the order. He again asserted that Leahy had "misled and deceived" the court, and also stated Leahy was "essentially requesting that this order be automatically renewed and I am opposing for that reason."[4]

The hearing on Leahy's request took place on July 6, 2022. At the outset, the court stated it had reviewed the file, and that it "want[ed] to make it clear . . . that there is a very specific and limited standard for the court's review of what is currently before the court. We have the petitioner's . . . request to renew his restraining order under . . . section 527.6[, subdivision] (j), the standard is whether there is a reasonable probability that the defendant's wrongful acts would be repeated in the future. And the law does not require that any new evidence be presented to support them."

Leahy submitted on his papers and reserved the right to respond to Peterson. The court confirmed that Leahy's declaration's assertions were true and correct.

Peterson sought to ask questions, characterizing them as going to Leahy's credibility, and to show Leahy was "sensationalizing" or had "exaggerated the narrative . . . ." In response, the court explained to Peterson

---

[4] At the same time, Peterson purported to file a motion to set aside a void default judgment, asking the court to deem the prior restraining orders void. The court at the hearing found the motion procedurally improper, including that it was not properly noticed and scheduled, and also found there was no default judgment to set aside. It declined to consider the papers, but stated the motion would be denied even if the court heard it.

7

it was "not focusing on the narrative" or "on all of the details of the underlying stalking case. The court's real focus is on whether there's a reasonable probability that your wrongful acts would be repeated in the future." The court continued: "And I have to tell you in all honesty that the fact that you have so many filings with respect to this request, including your most recent response to the request to renew the restraining order that focus on the underlying case, that focus on things that occurred 12 years ago, is concerning the court that you haven't let this go and moved on with your life and that there is a need to continue protection."

Asking for permission to respond, Peterson complained that Leahy's statements to the court were being accepted as fact, then stated: "If I don't have anything to dispute it, it just gets accepted and I'm stuck with, you know, continuing this matter for now, like you said, 12 years—or specific to the restraining order is 8 years—and [Leahy] said in his declaration he's just going to continue to ask for it to be renewed. So I used this as an opportunity—which he brought me to court. There has been nothing that has happened in the last 5 years. He brought me back to court to address this issue. So I used that as an opportunity finally to present the documentation that supports my position. Like I had mentioned earlier, I understand what you're saying about going back and talking about the 2010 case. I'm not bringing the 2010 case to talk about the 2010 case [*sic*]. [Leahy's] using that narrative to support his position, and he's still using it to support his position for the renewal saying that because this narrative is what it is, 'this is the reason why I'm requesting a renewal.' This is his state of mind, and that's why I addressed my state of mind in my response to his request. And so that's my explanation for—I completely understand what you're saying about the volume that I have presented to the court, and I just decided it was easier

8

for me to present documentation and have the court read that and make its decision based on that rather than, you know, regret not saying something that I wish I had said to the court."  The court interjected:

"The court:  Well, let me ask you a question.  One of the things that Mr. Leahy has pointed out in his request for a renewal is that as recently as November 9th of last year, that you filed a complaint against him in district court.  So did you file a complaint against him in district court November 9th of last year?

"[Peterson]:  I did, and he noted that that was not the reason he was requesting a renewal of a restraining order.

"The court:  Well, what I'm asking though is whether you've been able to move on with your life or whether you're still focused on Mr. Leahy and the 2010 case."

Peterson responded that he "would gladly move on with my life if he wasn't—" then asked to continue his questioning of Leahy on the renewal request.  The court stated it would allow leeway, but admonished Peterson that his questions needed to be relevant to the proceeding.  After several questions, the following colloquy took place:

"[Peterson]:  . . . So Mr. Leahy stated that he was going to seek a renewal every time this was set to expire.  And so my question is, regardless of anything that happens over the next five years, if nothing happens just like the previous five years in this instance, even though the last—just to prepare for this hearing I submitted documents to the court, is he going—is he going to automatically request a renewal despite anything that happens in the next five years?

"The court:  What is the relevance of that question?

9

"[Peterson]: The relevance is that he stated that it doesn't matter what happens. He's going to ask for a renewal, which is what he did here. And then he noted that he wasn't filing a renewal based on the civil complaint. So it wasn't—his request for renewal wasn't based on me filing a civil complaint to district court. So what is the basis of his request for the renewal, I guess, is the question.

"The court: Well, the court is the one to make a determination as to whether there's sufficient grounds for the renewal. A party can choose, for whatever motivation, to make a filing, but that doesn't mean it's going to be granted, and they need to explain their arguments. So the court doesn't find that relevant."

Peterson explained that he believed the basis for the original order was "important today," and sought to explain why he was asking his questions: "I guess I'm . . . not understanding what the facts of the case are is the reason why I'm asking the questions. I don't know what has been established and what has not been established." Peterson asked about a recorded interview with P.D., and how Leahy was getting his information, then told the court he had no further questions.

Peterson then asked the court whether his exhibits were part of the record, including a psychological report from April 2010. The court asked him to explain the relevance of the report:

"[Peterson]: The relevance, your honor, is [Leahy] uses the word delusional six times in his declaration. Is Mr. Leahy qualified to make a diagnosis of delusional?

"The court: The court doesn't find that to be relevant.

"[Peterson]: Does he have evidence to support—

10

"The court: The court's not going to ask that question and doesn't find the psychological evaluation from 2010 relevant to what's before the court today.

"[Peterson]: My mental state is not relevant to whether or not a restraining order should be renewed?

"The court: Whether Mr. Leahy was using the term delusional in a scientific way and what his qualifications are, the court isn't going to get into that issue. That's a side issue, and under Evidence Code section 352 the court is going to exclude it."

After several additional questions, the court heard arguments. Leahy's counsel argued: "Based on Mr. Peterson's declarations, it's clear that he believes that the basis for the restraining order has nothing to do with his own misconduct. He seems to think that Mr. Leahy is somehow thwarting Mr. Peterson's efforts to clear his name, which isn't the case. We believe there is reasonable probability that Mr. Peterson's wrongful acts will be repeated in the future if the petition isn't granted. Therefore, we ask for the court's protection against Mr. Peterson and respectfully request that the petition to renew the restraining order be granted."

Peterson stated: "My final argument, and I'm sorry if it is repeating myself, but I just want to make sure that I say what I intended to say being here today being that it's been five years. The only reason why I was brought back to San Diego—which I have not been to San Diego since I was a caretaker for my uncle. I've been in Illinois, which is, as Mr. Leahy has noted, 2,000 miles away, and there has been no contact or any—there's been no previous violence in my entire life. Regardless of whether or not a restraining order was granted in this case, there's been not one incident in my life related to violence. And I was brought here today by Mr. Leahy, so I

11

used that opportunity to get these—to get this removed from my record so that then I could get an expungement for the 2010 case, which is 12 years old, so that I can move on with my life.  So this is not—even though it may appear initially that because I presented all this information to the court, that I have not moved on.  All of this effort is so that I can move on, and I noted that in my declaration."  Peterson continued that he disputed Leahy's credibility on matters Leahy included in his declaration as to whether Peterson had stayed at the same hotels in Europe as P.D., stating Leahy "made it up to get this restraining order renewed" and "[i]t did not happen."  Peterson asked "for that reason alone this restraining order should not be renewed."

The court made its order:  "Based on the evidence that's been presented to this court and the standard that's applicable under . . . section 527.6[, subdivision] (j), the court finds that the petitioner has met the burden of proof to show reasonable probability that the defendant's wrongful acts would be repeated in the future, and the court will grant the request to renew the restraining order for five years."  After admonishing Peterson for not being respectful by beginning to pack his things, the court continued:  "The court's determination is not based on whether or not Mr. Peterson stayed at the same hotel in Europe as [P.D.] 12 years ago.  Rather, it's based on the evidence that's been presented that Mr. Peterson has continued as recently as November of 2021, last November, to relitigate and perseverate on the underlying investigation and also this restraining order proceeding, and that indicates to the court that there is a reasonable probability that he would continue to harass Mr. Leahy in the future."

Peterson filed this appeal from the second renewal order.

DISCUSSION

I. *Legal Principles and Standard of Review*

"The Legislature enacted section 527.6 in 1978 in order 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citation.] The provision was intended to ' "establish an expedited procedure for enjoining acts of 'harassment' " ' in order ' "to provide quick relief to harassed persons." ' [Citation.] In the Legislature's view, 'procedures under [then-]existing law'—namely 'a tort action based either on invasion of privacy or on intentional infliction of emotional distress'—were 'inadequate to remedy the mental and emotional distress suffered by a person,' and '[t]he length of time it takes to obtain an injunction in many cases is too long.' " (*Olson v. Doe* (2022) 12 Cal.5th 669, 677.)

Thus, "[s]ection 527.6 provides for 'expedited injunctive relief to victims of harassment.' [Citation.] The statute enables a person who has suffered harassment—defined by the statute as 'unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose'—to 'seek a temporary restraining order and an injunction prohibiting harassment . . . .' [Citation.] 'The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress . . . .' " (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 88.) But constitutionally protected activity—including the filing and prosecution of a lawsuit or conduct relating to litigation—is not a course of conduct within the meaning of the statute. (§ 527.6, subd. (b)(1) [" 'Constitutionally protected activity is not included within the meaning of "course of conduct" ' "]; *Bonni v.*

13

*St. Joseph Health System* (2021) 11 Cal.5th 995, 1024 ["The filing of a lawsuit is an exercise of the First Amendment right to petition the government"]; *Hansen v. Volkov* (2023) 96 Cal.App.5th 94, 97, 105, citing *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056, [filing and prosecution of a lawsuit by an attorney representing a client is an act in furtherance of a person's right of petition or free speech]; see e.g., *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537 ["anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with . . . litigation"].)

Subdivision (j)(1) of section 527.6 provides for renewal of an existing civil harassment restraining order. (*Cooper v. Bettinger*, *supra*, 242 Cal.App.4th at p. 89.) It states: "In the discretion of the court, an order issued after notice and hearing under this section may have a duration of no more than five years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. The order may be renewed, upon the request of a party, for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. A request for renewal may be brought any time within the three months before the order expires." (§ 527.6, subd. (j)(1).) " '[A] restraining order should be renewed only when the trial court finds a reasonable probability that the defendant's wrongful acts would be repeated in the future.' " (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 495, quoting *Cooper*, at p. 90.) Renewal is not

14

automatic, but subject to the court's discretion whether to renew the order and its duration. (*Cooper*, at p. 89.)

Because the court exercises discretion when deciding whether to renew the restraining order, we normally apply an abuse of discretion standard to that decision. The abuse of discretion standard "is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) When a court's express or implied finding of fact is challenged on appeal, we uphold it if supported by substantial evidence. (*Ibid.*)

But when the lower court's determination of a legal question is at issue, we conduct an independent review, without deference to the court's conclusion. (*Haraguchi v. Superior Court, supra*, 43 Cal.4th at p. 712 [conclusions of law are reviewed de novo]; see also *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 ["whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law"].) " 'All exercises of discretion must be guided by applicable legal principles . . . which are derived from the statute under which discretion is conferred. [Citations.] If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumption is not an exercise of informed discretion and is subject to reversal.' " (*Cooper v. Bettinger, supra*, 242 Cal.App.4th at p. 90; see also *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116, quoting *People v. Rodriguez* (2016) 1 Cal.5th 676, 685 [judicial discretion to grant or deny a protective order application is not unfettered; " 'we consider

15

whether the trial court's exercise of discretion is consistent with the statute's intended purpose' "].)

## II. *Parties' Supplemental Briefing*

We asked the parties to brief section 527.6, subdivision (j)(1)'s language providing that a civil harassment restraining order "may be renewed . . . for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order . . . ." Specifically, we asked whether this language authorizes a second five-year renewal without a showing of additional harassment; what evidentiary standard applies; and whether Leahy met that standard at the July 6, 2022 renewal hearing.

### A. *Peterson's Position*

Peterson says he "somewhat" addressed the issue in opposition to Leahy's renewal request by citing *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275. He acknowledges that *Ritchie* does not involve distinctions between a restraining order's first or second renewal, but deals with the question of "automatic renewal." According to Peterson, *Ritchie* is relevant because Leahy stated he would be asking for renewal "for the remaining of his life [*sic*]" and Leahy's request was absent a showing of additional harassment as well as without regard to Peterson's conduct.

In *Ritchie*, the Court of Appeal decided as a matter of first impression that a trial court faced with a contested petition for renewal of a domestic

16

violence protective order (Fam. Code, § 6345)[5] erred when it "granted the renewal . . . on the assumption petitioner was entitled to that order 'just upon request.'" (*Ritchie v. Konrad, supra,* 115 Cal.App.4th at pp. 1279, 1283.) The petitioner's "subjective desire the protective order be extended" was not enough, rather, "the court should have considered evidence tendered by both sides and determined whether [the petitioner's] expressed fear of future abuse was genuine and also reasonable." (*Id.* at p. 1282.) The court stated in view of the overall purpose of domestic violence legislation that "in contested cases, a court is only justified in ordering an extension of such an order where it finds to do so will advance the legislative purpose of preventing future abuse. This means it must find evidence there is some reasonable risk, at

---

[5] The domestic violence protective order renewal provision at issue in *Ritchie v. Konrad, supra,* 115 Cal.App.4th 1275 differs in a significant way from the civil harassment restraining order renewal provision at issue here. The Legislature permits a domestic violence protective order to be renewed "*either for* five or more years, *or permanently*, at the discretion of the court, without a showing of further abuse since the issuance of the original order" (Fam. Code, § 6345, subd. (a), italics added), whereas a restraining order under section 527.6 may be renewed "for a duration of *no more than* five additional years, without a showing of any further harassment since the issuance of the original order . . . ." (§ 527.6, subd. (j)(1), italics added.) There are other important differences: "'The [Domestic Violence Protection Act (DVPA)] . . . permit[s] issuance of protective orders on a different, broader basis than permitted under . . . section[ ] 527.6 . . . . [Citation.] Additionally, a lower level of proof is required for issuance of a protective order under the DVPA . . . . a preponderance of the evidence, rather than clear and convincing evidence.'" (*Cooper v. Bettinger, supra,* 242 Cal.App.4th at p. 90.)

least, such abuse will occur sometime in the future if the protective order is not renewed." (*Id.* at p. 1287.)[6]

To the extent *Ritchie* is pertinent here, it is for the proposition that reversal of a restraining order may be warranted where a party affirmatively demonstrates with a court's explicit statements that the court did not consider relevant evidence. (*Ritchie v. Konrad, supra,* 115 Cal.App.4th at p. 1282 ["the trial court erred when it issued the renewal order based solely on Ritchie's subjective desire the protective order be extended" and it "should have considered evidence tendered by both sides and determined whether Ritchie's expressed fear of future abuse was genuine and also reasonable"]; see also *Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 514 [discussing *Ritchie,* and stating, "The failure to weigh relevant evidence can be deemed an abuse of discretion"].)

B. *Leahy's Position*

For his part, Leahy argues section 527.6 authorizes a second five-year renewal of a civil harassment restraining order without a showing of additional harassment. He maintains there is "potential ambiguity" in the statute in that it "does not say that a [civil harassment restraining order] may only be renewed one time. Instead, [the statute] limits the length of

---

6    Ultimately the *Ritchie* court concluded based on California law and legislative history the petitioner had to satisfy an objective test to renew a protective order in contested cases: "A trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse. So there should be no misunderstanding, this does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed. It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie v. Konrad, supra,* 115 Cal.App.4th at p. 1290.)

each renewal to five years, which allows the restrained party the opportunity to argue against the additional renewal. To read into the statute additional language to limit a petitioner to only one renewal of a [civil harassment restraining order] would greatly affect the potential to remain safe, as intended by the California Legislature." He argues we should avoid such consequences in interpreting the statute.

Leahy further argues that if we conclude a showing of further harassment is necessary to obtain a second five-year renewal, he provided clear and convincing evidence of Peterson's further harassment at the July 2022 hearing by showing Peterson filed the district court lawsuit against him "to re-litigate his underlying conviction for stalking, for which [Leahy] was the investigating officer." Leahy states: "It is believed that [Peterson] has filed [the district court] action in order to have a legitimate reason for continuing to travel to San Diego, where [Leahy] lives and works, from [Peterson's] out-of-state residence. . . . [Leahy] has continued concerns that [Peterson] remains obsessed with him, and will harm [Leahy] or [Leahy's] wife. . . . The trial court noted this lawsuit as part of the reason for renewing the [civil harassment restraining order] against [Peterson]. . . . As such, to the extent necessary, [Leahy] has provided evidence of [Peterson's] further harassment."

Leahy also says that if we conclude he needed to show further harassment, this court must consider "the totality of the evidence presented that led to the issuance of the initial [civil harassment restraining order] in 2014, along with the first renewal in 2017 . . . , along with the reference to the 2021 federal lawsuit cited above." According to Leahy, this "meets the necessary evidentiary burden to obtain a [civil harassment restraining order]."

19

Finally, Leahy maintains Peterson waived any argument of any allegedly improper second renewal by failing to raise it in the trial court or in his appellate briefs, and we must apply the presumption of correctness to affirm the court's order.

### III. *Exceptions to Forfeiture Apply*

We begin by addressing and rejecting Leahy's forfeiture argument. It is true this court will " 'ordinarily not consider procedural defects or erroneous rulings in connection with . . . defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method.' " (*FCM Investments, LLC v. Grove Pham, LLC* (2023) 96 Cal.App.5th 545, 553.) But we recently explained in *FCM Investments* that application of the forfeiture doctrine is not automatic; reviewing courts retain discretion to consider points not raised before the trial court and there are exceptions to the forfeiture rule. (*Ibid*.) "First, the rule does not apply to a question of law that can be decided 'from facts which are not only uncontroverted in the record, but which could not be altered by the presentation of additional evidence.' " (*Ibid*.) Second, a court can decline to apply forfeiture to " 'matters involving the public interest or the due administration of justice.' " (*Id*. at p. 554.)

Here, we are faced with a pure question of law pertaining to the standards for renewing a civil harassment restraining order, namely whether the language of section 527.6 permits a second five-year renewal of such an order without a showing of additional harassment. Even if the ultimate issue of propriety of the court's order turned on the underlying facts, Leahy asserts he demonstrated "further harassment since the issuance of the original order" within the meaning of the statute based only on Peterson's 2021 federal court lawsuit. In our view, this is not a showing that "could . . . be

altered by the presentation of additional evidence." (*FCM Investments, LLC v. Grove Pham, LLC*, *supra*, 96 Cal.App.5th at p. 553.) Thus, we may apply this exception to forfeiture and address for the first time on appeal this issue of law based on undisputed facts.

We further conclude that ensuring these types of restraining orders are renewed under proper legal standards promotes the due administration of justice. (*FCM Investments, LLC v. Grove Pham, LLC*, *supra*, 96 Cal.App.5th at p. 554.) This is particularly true here, where Leahy sought to subject Peterson to a second renewal order restraining his conduct for another five-year duration. It is enough to say that the second renewal order may potentially violate the law, subjecting Peterson to invalid restraints on his conduct and other associated burdens. (Accord, *Ritchie v. Konrad*, *supra*, 115 Cal.App.4th at p. 1284 ["a protective order imposes costs and penalties on the restrained party—the stigma (which may have practical consequences for employment and elsewhere in life) . . . . The fact a judge found enough grounds to grant a protective order three years earlier does not necessarily mean sufficient grounds remain to renew that order for another three years— or as in this instance, permanently—merely because the protected party files a 'request' and expresses her subjective desire the court issue such an extension"].) Renewing a section 527.6 restraining order under improper legal standards impedes the fair administration of justice.

As in *FCM Investments, LLC v. Grove Pham*, *supra*, 96 Cal.App.5th 545, even if these exceptions did not apply, we would exercise our discretion to address the issue. Significant interests are at stake when a court subjects a person to repeated civil harassment restraining orders based on long past conduct. These interests and the potential burdens warrant consideration of the question.

IV. *Section 527.6's Plain Language Limits Civil Harassment Restraining Order Renewals to Five Years in Duration; Renewal Beyond Five Years Requires a Showing of New Harassment as Defined by Section 527.6, Subdivision (b)(3)*

Our resolution of the question presented begins and ends with section 527.6, subdivision (j)(1)'s statutory language, giving it a "plain and commonsense meaning . . . ." (*Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268, 278-279.) Where statutory language is clear, "courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Id.* at p. 279; see also *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 [" ' "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs" ' "].)

The subdivision is unambiguous; it permits a party to renew a section 527.6 civil harassment restraining order for a period of "*no more than* five additional years" without need to show "further harassment since the issuance of the original order . . . ." (See also *Searles v. Archangel* (2021) 60 Cal.App.5th 43, 52, fn. 7 ["The restraining order may be renewed for a duration of no more than five additional years without a showing of any further harassment since the issuance of the original order"].) Stated another way, to obtain a renewal beyond the initial five-year renewal period, the petitioning party must make a showing that, after the original order issued, the restrained person has engaged in new conduct constituting harassment. Given the statute's unambiguous meaning, we need not consider legislative history. (*Green v. State of California* (2007) 42 Cal.4th 254, 260 ["If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent"].)

22

This does not mean, as Leahy suggests, that the statute limits a section 527.6 petitioner to a single five-year renewal. A person seeking renewal of an initial civil harassment restraining order may return to court more than once and obtain five one-year renewals, for example, or one three-year and two one-year renewals, without having to demonstrate "further harassment [by the restrained party] since issuance of the original order." (§ 527.6, subd. (j)(1).) In other words, renewal based on the restrained party's past conduct underlying the original restraining order may be had in increments adding up to five years. Thereafter, to obtain an additional renewal beyond the first five-year renewal period, the petitioner must demonstrate new episodes of qualifying misconduct, i.e., "further harassment since the issuance of the original order." (Section 527.6, subd. (j)(1); see Merriam-Webster's Dictionary Online [defining the adjective "further" as "going or extending beyond" or "additional," (<www.webster.com/dictionary/further#dictionary-entry-2) and the adverb "since" as "after a time in the past" or "subsequently" (<www.merriam-webster.com/dictionary/since#dictionary-entry-3)].)[7]

In doing so the petitioner must meet the standards of subdivision (b)(3) of section 527.6 by showing clear and convincing evidence of: "(1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) 'which seriously alarms, annoys, or harasses the person'; (4) 'which serves no legitimate purpose'; (5) which 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the plaintiff'; and (6) which is not a '[c]onstitutionally protected activity.' " (*Schild v. Rubin* (1991) 232

---

[7] An additional renewal beyond the five-year renewal period(s) may also be characterized as a new petition for injunction as it requires the same showing of harassment as would be required for an original petition.

Cal.App.3d 755, 762; section 527.6, subd. (i) ["If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment"].) There is no reason to think the Legislature would impose a different standard on a petitioner having to show new harassment because he or she seeks renewal beyond the five-year limit of the first renewal period(s). The five-year limitation and requirement of an additional showing of harassment under section 527.6, subdivision (j) prevents a petitioner from obtaining in perpetuity renewals based solely on conduct underlying the original order, which can become stale with the passage of time. (See *Ritchie v. Konrad*, *supra*, 115 Cal.App.4th at p. 1291 [finding relevant to the question of reasonable apprehension of future abuse whether "the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order"].)

We reject Leahy's contention that in deciding whether he showed further harassment, the court may consider "the totality of the evidence presented that led to the issuance of the initial [civil harassment restraining order] in 2014 . . . ." The contention would read out section 527.6's language "since the issuance of the original order," which means the petitioner's evidence of further harassment cannot be the acts leading to the issuance of the original order.

The superior court did not require Leahy to present evidence of Peterson's further harassment occurring since issuance of the original 2014 restraining order, and Leahy did not do so. Though Leahy initially disclaimed any reliance on Peterson's filing of litigation as the basis for his renewal request, in his supplemental brief he argues the clear and convincing evidence of additional conduct by Peterson that assertedly caused him to

24

believe Peterson would repeat his harassing behavior was Peterson's filing of the district court lawsuit. That action and statements associated with it are, of course, constitutionally protected activity expressly exempt from section 527.6's definition of harassment. (§ 527.6, subd. (b)(1); *Hansen v. Volkov*, *supra*, 96 Cal.App.5th at p. 105 [holding attorney's e-mails relating to a deposition were constitutionally protected, and thus "it was error for the court to conclude they were properly considered part of a course of conduct of harassment"].)[8]

## V. *The Court's Error Was Not Harmless*

When a trial court operates under an incorrect understanding of the applicable law, it abuses its discretion, making its order "subject to reversal." (*Cooper v. Bettinger, supra*, 242 Cal.App.4th at p. 90; see, e.g., *Ritchie v. Konrad, supra*, 115 Cal.App.4th at p. 1282.) That is the case here, where the court granted Leahy a second five-year renewal under a misunderstanding of the law, believing that Leahy was not required to make a showing of further harassment to obtain it. As we have set out in detail above, at the hearing, Peterson raised legitimate questions about the factual basis for Leahy's renewal request, questions that the court found lacked relevance. But because section 527.6, subdivision (j)(1) required Leahy to demonstrate "further harassment since the issuance of the original order," in order to

---

[8] At oral argument, Leahy reiterated his position that Peterson's district court lawsuit was brought to relitigate the underlying matters. But Peterson's motives in bringing suit are not relevant. (See *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 406 ["Silvey was constitutionally protected in exercising his right of petition to administrative agencies, or the executive branch of government, irrespective of the considerations that prompted his actions"; such activity could not be classified as a harassing course of conduct and could not be enjoined under section 527.6].)

25

obtain a renewal beyond the first five-year renewal obtained in 2017, Peterson's questions went directly to proper application of the statute.

Given our conclusion, we reverse the order and remand with directions that the superior court reconsider Leahy's renewal petition under the proper standard, and decide whether Leahy demonstrated Peterson engaged in "further harassment since the issuance of the original order." (§ 527.6, subd. (j)(1).)

## DISPOSITION

The order is reversed. On remand the superior court is directed to reconsider Leahy's renewal petition under the standards set forth in this opinion. The parties shall bear their own costs on appeal.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.

26